UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

FREDDIE MCGRIER,

                        *Plaintiff,*

            -against-

THE CITY OF NEW YORK, ASSSISTANT DISTRICT ATTORNEY
DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY
VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441),
DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT
RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY
D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM
(SHIELD # 1916), individually and in their official capacity as New York
City Police Officers, CORRECTION OFFICER DANIEL ROBLES
(SHIELD #13214) AND CAPTAIN "JOHN" THOMPSON (SHIELD
#86) individually and in their official capacity as New York Correction
Officers, and CORRECTION OFFICER JOHN DOES 1-5, individually
and in their official capacity as New York Correction Officers1

                        *Defendants.*

-------------------------------------------------------------------------------X

## 2ND AMENDED COMPLAINT

JURY TRIAL
DEMANDED

16 Civ. 5667 (VEC)

Plaintiff **FREDDIE MCGRIER,** by his attorneys **NOVO LAW FIRM, PC,** complaining

of Defendants **THE CITY OF NEW YORK, ASSSISTANT DISTRICT ATTORNEY**

**DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE**

**ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140),**

**LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY**

**D'AMATO (SHIELD #825), DETECTIVE THOMAS AASHEIM ( SHIELD # 1916),**

**CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214) AND CAPTAIN**

---

1 The "John Doe" defendants were identified as "Correction Officers" in the original Complaint to fairly apprise corrections officers that he/they were the intended defendants. Likewise, it is possible that once the names of the individual defendants are discovered and they are substituted for the John Does, their claims might relate back to the original filing of the complaint. *Owens v. Okure,* 488 U.S. 235, 250-51 (1989); *Cotto v. Pabon,* 2008 WL 4962986, *13 (S.D.N.Y. 2008).

"JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5 respectfully alleges, upon information and belief:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which Plaintiff **FREDDIE MCGRIER** ("Mr. McGrier") seeks relief for Defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and of rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution, and of rights secured under the laws and Constitution of the State of New York.  Plaintiff seeks damages, compensatory and punitive, affirmative and equitable relief, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems equitable and just.

## JURISDICTION AND VENUE

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343 and § 1331, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3.     Jurisdiction is also invoked herein pursuant to the First, Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 and 42 U.S.C. § 1988.

4.     Plaintiff respectfully requests that this Court exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any state court causes of action that arise from a common nucleus of operative facts that give rise to the federally based causes of action pleaded herein, and as against all parties that are so related to claims in this action within the original jurisdiction of this court that are formed as part of the same case or controversy.

5.     Venue herein is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 (a), (b) and (c).

## JURY DEMAND

6.    Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

7.    Upon information and belief and within the time prescribed by law, a sworn Notice of Claim stating, among other things, the time when and the place where the injuries and damages were sustained, together with Plaintiff's demands for adjustment thereof was duly served on Plaintiff's behalf on the Comptroller of Defendant **THE CITY OF NEW YORK** and that, thereafter, said Comptroller for Defendant **THE CITY OF NEW YORK** refused or neglected for more than thirty (30) days, and up to the commencement of this action, to make any adjustment or payment thereof, and that, thereafter, and within the time provided by law, this action was commenced.

8.    Upon information and belief, pursuant to General Municipal Law §50(h), a hearing was not held.

### PARTIES

9.    Plaintiff is 25 years old and at all times hereinafter mentioned was, and still is, a citizen of the United States residing at 464 West, 126th Street, County of New York, City of New York and State of New York.

10.   Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a municipal corporation duly incorporated and existing under and by virtue of the laws of the State of New York.

11.   Defendant **THE CITY OF NEW YORK** was, and still is, at all times relevant herein, a municipal entity created and authorized under the laws of the State of New York. It is authorized to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant **THE CITY OF NEW YORK** assumes the risks incidental to the maintenance of a police force and the

employment of police officers as said risk attaches to the public consumers of the services provided by New York City Police Department NYPD).  Defendant **THE CITY OF NEW YORK** operates the NYPD, a department or agency of Defendant **THE CITY OF NEW YORK** and is responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12.   Defendant **ASSISTANT DISTRICT ATTORNEY DEREK LYNTON AND ASSISTANT DISTRICT ATTORNEY RAY VALERIA** were, and still are, at all times relevant herein, duly appointed and acting agent, servant, and employees of Bronx County District Attorney's Office a municipal agency of Defendant **THE CITY OF NEW YORK**

13.   Defendants **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM (SHIELD # 1916),** were, and still are, at all times relevant herein, duly appointed and acting officers, agents, servants, and employees of New York City Police Department a municipal agency of Defendant **THE CITY OF NEW YORK**.

14.   Defendants **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM ( SHIELD # 1916),** were, and still are, at all times relevant herein, acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant **THE CITY OF NEW YORK,** were acting for, and on behalf of, and with the power and authority vested in them

4

by Defendant **THE CITY OF NEW YORK** and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties. Defendants **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM ( SHIELD # 1916),** are sued in their individual and official capacities.

15.    At all times relevant Defendants **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM ( SHIELD # 1916),** were police officers, detectives or supervisors employed by the NYPD.

16.    Defendants **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214)** and **CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5,** were and still are, at all times relevant herein, duly appointed and acting officers, agents, servants, and employees of New York City Department of Correction a municipal agency of Defendant **THE CITY OF NEW YORK**.

17.    Defendants **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214) AND CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5** were, and still are, at all times relevant herein, acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of Defendant **THE CITY OF NEW YORK,** were acting for, and on behalf of, and with the power and authority vested in them by Defendants **THE CITY**

**OF NEW YORK** and New York City Department of Correction and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

18.     At all times relevant herein, all individual defendants were acting under color of state law.

## STATEMENT OF FACTS

19.     Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

20.     Upon information and belief an alleged commercial robbery of a gas station and murder of a Mr. Lamin Sillah occurred on or about September 4, 2012.

21.     Upon information and belief, on or around September 14, 2012 Plaintiff was a lawful citizen pedestrian when he was stopped, handcuffed, searched and/or otherwise arrested by Police Officers from NYPD's Violent Felony Squad.

22.     Plaintiff FREDDIE MCGRIER was placed into a van and transported to 48th Precinct.

23.     Upon information and belief, at no point Mr. McGrier was read his Miranda Rights.

24.     During this time, he was a victim of police misconduct, police brutality, was falsely arrested and falsely detained for a crime he did not commit.

25.     Upon information and belief, at no point in time did **FREDDIE MCGRIER** resist arrest or disobey arresting officers' commands.

26.     Upon arrival to the 48th Precinct, Plaintiff **FREDDIE MCGRIER** was photographed, fingerprinted and/or otherwise processed and placed into holding cell.

27.     Upon information and belief, Plaintiff's numerous requests for a phone call were ignored and/or otherwise denied.

28.    Upon information and belief, the investigation, arrest and malicious prosecution of Mr. McGrier was entirely the product of "tunnel vision" in that the Defendants initiated and continued to initiate a prosecution against Mr. McGrier despite even a scintilla of evidence.

29.    Upon information and belief, **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM (SHIELD # 1916)**, arrived at the scene on September 4, 2012 and also recklessly failed to collect and/or preserve vital DNA which would have proved Mr. McGrier's innocence. *Defendants Bates Stamp 200, 201 (Hereinafter, "D")*.

30.    Upon information and belief, **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM (SHIELD # 1916)**, obtained a surveillance video depicting a physical struggle between the unknown assailant and Mr. Lamin Silah. *D - 33, 45.*

31.    Upon information and belief, despite this apparent struggle, **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825), AND DETECTIVE THOMAS AASHEIM (SHIELD # 1916)**, failed to conduct DNA collection of the victim's fingernails and clothing which could have revealed the identity of the true assailant. *See D-200-201. Criminal Trial Trancript page 170-180.*

32. Upon information and belief, the investigating officers conducted DNA swabs of both the inside and outside of door knob on or about September 5, 2012 and these results revealed that Mr. McGrier's DNA was not present anywhere on the door or the scene. *D- 200-201.* *Criminal Trial Trancript page 166-179.*

33. Upon information and belief, the DNA examination was not flawed in that it revealed DNA evidence from multiple individuals, but none of them were Freddie McGrier's DNA.

34. Upon information and belief, the examination of the DNA collected on the door knob was not performed until May 10, 2015 approximately two years (2) years and seven (8) months after **FREDDIE MCGRIER** was unlawfully arrested. During this entire time Defendants held **FREDDIE MCGRIER** in unconstitutional confinement in Otis Bantum Correctional Center (OBCC) located at Rikers Island Correctional Facility as he awaited trial for a crime which Defendants did not have probable cause to make an arrest. *D- 200-201.*

35. Upon information and belief, in April 2015 **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON AND ASSISTANT DISTRICT ATTORNEY RAY VALERIA** moved the Bronx Criminal Court to compel **FREDDIE MCGRIER** to submit to a DNA comparison of the above collected DNA samples and the examination revealed zero presence of **FREDDIE MCGIRER**'s DNA even though the surveillance video showed the assailant made significant contact with the tested doorknob.

36. After the DNA tests revealed that **FREDDIE MCGRIER** could not have been present on the night of the crime on September 4, 2012 any probable cause that had existed at the time of arrest (Plaintiff is not conceding that there was) had clearly dissipated, yet **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON and ASSISTANT DISTRICT ATTORNEY RAY VALERIA** continued their unjust, wrongful and improper motive to obtain a conviction in a high-profile matter no matter the cost and injustice.

37.     Upon information and belief, in addition to **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM (SHIELD # 1916),** failures to timely test the doorknob DNA and collect fingernail and clothing DNA, they also failed to preserve the victims clothing before it was "lost" in Hurricane Sandy on October 22, 2013 approximately two months after the September 4, 2012 incident.

38.     Upon information and belief, **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM (SHIELD # 1916),** conducted an interview of a "potential witness" who could not see the perpetrators face, but any information provided directly conflicted with the only "present witness" who testified at trial, Jason Mwewa, as the unknown witness described the perpetrator as a dark skinned black male wearing a blue NY Giants Hoodie and riding a bicycle and offered no description of the bike. *Defendants' Bates Stamp 79 Complaint Follow Up Report #32.*

39.     Another witness did not see the perpetrator's face and could only describe the perpetrator as person riding a bike wearing all blue and a blue hooded sweatshirt. Once again a description of the bicycle was not offered. *Defendants' Bates Stamp 53 Complaint Follow Up Report #11.*

40.     Jason Mwewa's description of the assailant is even more muddled by a prior account on September 4, 2012 wherein he described the assailant as a light skinned black male. In fact, Mr. Mwewa did not offer any statement whatsoever which described the man's face other than a "light skinned black male" and never made any statement that he observed the suspect's face. *Defendants' Bates Stamp 52 Complaint Follow Up Report #10.*

41.  Upon information and belief, Jason Mwewa also failed to mention that he saw the face of the suspect at the Grand Jury.  In fact, his testimony is silent as to a description of the suspect's face. *D- 306-307. Criminal Trial Transcript page 95-96.*

42.  Upon information and belief, Jason Mwewa never provided a description of the suspect's face or even state that he saw the suspect's face until Freddie McGrier's criminal trial nearly three years later after the incident.  At trial, in October of 2015, Mr. Mwewa indicated that the district attorney's office had shown him the video of the incident a number of times. *D- 308-309. Criminal Trial Transcript pages 97-98.*

43.  Upon information and belief, the only witness of significance, Jason Mwewa, never saw the assailant's face on September 4, 2012.  Mr. Mwewa failed to identify a suspect from the photo array conducted by Detective **ROBERT HENN (TAX ID #906441)** which included 1,411 results versus a separate photo array where he was only shown 6 results.

44.  Upon information and belief, **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** created a photograph/poster from the surveillance video depicting the assailant and victim, but the photograph/poster was deemed "too blurry" and "pixelated" to produce a result by the Bronx Facial Recognition Unit. *D- 75*

45.  Even though the video and photograph was rejected by the facial recognition unit as an insufficient picture, Defendants nevertheless published the photograph/poster to the community through the media and Crime Stoppers with a reward of $2,000.00 for any knowledge regarding a potential suspect. *D- 164.*

46.     Upon information and belief, on or about September 10, 2012 a man known to all defendants as drug addict, Raymond Velez, called Crime Stoppers to notify the NYPD that he believed Mr. McGrier committed the crime on September 4, 2012 and, most importantly, he collected a $2,000.00 reward for his oral statement. *Criminal Transcript page 228, lines 1- 25, page 236, lines 1-4.*

47.     Upon information and belief, on or about September 10, 2012, Mr. Raymond Velez and his long time drug dealer, Isaiah Taveras, visited the 48th precinct to provide information regarding the crime stoppers poster and to collect a reward of $2,000.00. *Criminal Transcript page 236, lines 1-14.*

48.     Upon information and belief, Isaiah Taveras later fled the country after the NYPD conducted a drug raid of his house sometime in early 2014 and he did not testify at trial nor could he be contacted by authorities prior to the trial. *Criminal Trial Transcript page 234-235.*

49.     Upon information and belief, on or about September 11, 2012, Raymond Velez made a single statement to Defendant **DETECTIVE ROBERT HENN (TAX ID #906441)** which was on or about September 11, 2012. *Transcript page 248, lines 19-25 and page 249, line 1.*

50.     Upon information and belief, Raymond Velez stated to **DETECTIVE ROBERT HENN (TAX ID #906441)** that Freddie McGrier randomly walked into Isaiah Taveras' house and admitted to him that he committed the September 4, 2012 murder which was described on television. *Transcript page 241, line 1-5.*

51.     Upon information and belief, **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) AND DETECTIVE THOMAS AASHEIM**

( SHIELD # 1916) selected **FREDDIE MCGRIER** as the prime suspect in the murder of Lamin Sillah and they immediately discarded and/or failed to investigate any other more plausible suspects and/or theories of criminal liability on September 4, 2012.

52.   Unfortunately for **FREDDIE MCGRIER, ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825)** and **DETECTIVE THOMAS AASHEIM (SHIELD # 1916**) did not even conduct the most minimal investigation required by law to corroborate the veracity and reliability of Raymond Velez's singular statement.

53.   **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825)** and **DETECTIVE THOMAS AASHEIM ( SHIELD # 1916)** failed to inquire into the relationship between Raymond Velez and **FREDDIE MCGRIER** and they further failed to and/or attempted to obtain any proof or corroboration to validate the statement made by Raymond Velez against **FREDDIE MCGRIER** *Criminal Trial Transcript page 23, lines 4-17.*

54.   Furthermore, **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825)** and

**DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** failed to ask for, or obtain, a written statement or statement under oath. *Transcript page 238, lines 4-13, pages 238-240.*

55.   Upon information and belief, prior to **FREDDIE MCGRIER**'s arrest on September 14, 2012 **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** received one solitary statement from Raymond Velez without a second conversation and/or corroboration as to the tip/statements veracity in exchange for $ 2,000.00. *Transcript page 238, lines 4-13, pages 238-240.*

56.   Upon information and belief, there exists zero evidence within the NYPD investigation file or within the District Attorney's file containing a written statement from either Raymond Velez or Isaiah Taveras incriminating **FREDDIE MCGRIER** for the murder committed on September 4, 2012.

57.   Upon information and belief, **FREDDIE MCGRIER**'s criminal attorney was not provided a statement from Raymond Velez or Isaiah Taveras in violation of his Brady rights.

58.   Even worse, Raymond Velez admitted to knowing **FREDDIE MCGRIER** for only a grand total of eight or nine weeks prior to providing his statement on September 11, 2012. *Criminal Transcript page 240, lines 9-11.*

59.   Despite these facts, before **FREDDIE MCGRIER's arrest and further indictment, ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT**

RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM ( SHIELD # 1916) spoke to Raymond Velez only one time and never once inquired into the nature of the relationship between him and **FREDDIE MCGRIER**. *Criminal Transcript page 240.*

60. Upon information and belief, **FREDDIE MCGRIER** became the victim of "early focus" and "tunnel vision" when Defendants conducted a second photo array with victim/witness Jason Mwewa on September 11, 2012 despite Jason Mwewa never informing the Officers at any point during the preliminary interviews, investigation, Grand Jury, etc. that he in fact observed the suspect's face. *D- 110 and D-52.*

61. Upon information and belief, after an improper photo array of only six (6) different men this time, compared to the prior photo array of 1411 just days earlier, Jason Mwewa now indicated he recognized Mr. McGrier's photo as he succumbed to the suggestive nature of **DEFENDANTS' ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM ( SHIELD # 1916)** innuendos and intimidation. *D- 110.*

62. Upon information and belief, **DEFENDANTS ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM ( SHIELD # 1916)** arrested and initiated the

malicious prosecution against **FREDDIE MCGRIER** on September 14, 2012 and he was then transported to the 48th precinct in Bronx County, New York. *Defendants' Bates Stamp 118 Complaint Follow Up Report #58.*

63.  Upon information and belief, on September 14, 2012 Freddie McGrier was charged with 125.25 homicide after a conferral between NYPD Homicide Unit (homicide supervisor Edward Taulty) and Defendants **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA**. *Defendants' Bates Stamp 118 Complaint Follow Up Report #58.*

64.  Not only were **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA** involved in the arrest of **FREDDIE MCGRIER** but they were also clearly involved in the investigation and pre-indictment stage of this prosecution against **FREDDIE MCGRIER**.

65.  Upon information belief, **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, and ASSISTANT DISTRICT ATTORNEY RAY VALERIA** were directly involved and/or ordered two separate identification/investigation procedures on September 6, 2012 at approximately 1:20 P.M. and September 13, 2012 at approximately 8:00 P.M. *September 28, 2012 and September 25, 2012 letters From ADA Derek Lynton to David Segal, ESQ, Mr. McGrier's criminal attorney.*

66.  Upon information and belief, **DEFENDANTS ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA and DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM ( SHIELD # 1916)** acted in concert with an

"improper motive" and without probable cause and/or reasonable suspicion to initiate an investigation and continue a prosecution against **FREDDIE MCGRIER**.

67.    Upon information and belief, **DEFENDANTS – Detectives,** failed to search for the Blue NY Giants Hoodie, a weapon/gun and/or a bicycle which was often mentioned in the investigatory DD5's. *Defendants' Bates Stamp 118 Complaint Follow Up Report #58.*

68    Upon information and belief, there was not a single piece of evidence to arrest and detain Mr. McGier for the crime committed on September 4, 2012.

69.    **DEFENDANTS DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825)** and **DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** never discovered or even searched for a weapon, the blue sweatshirt, a bicycle and **FREDDIE MCGRIER**'s DNA was not present on the scene.

70.    Upon information and belief, on September 14, 2012, **DEFENDANTS ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM ( SHIELD # 1916)** conducted an in-person lineup with Jason Mwewa ( the only alleged "witness" to the subject incident) and he once again failed to choose/select **FREDDIE MCGRIER** out of the lineup. *D- 11*

71.    Despite the utter lack of evidence against **FREDDIE MCGRIER**, he remained in custody and was escorted back to his holding cell. **DEFENDANTS ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY**

VALERIA, **DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM ( SHIELD # 1916)** never attained probable cause to arrest Mr. McGrier and any probable cause that may have once existed certainly dissipated when the only "eye witness" asked to identify a suspect in a lineup indeed failed to identify FREDDIE MCGRIER.

72.     In fact, **DEFENDANTS ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM (SHIELD # 1916) improperly held FREDDIE MCGRIER** in custody even after the lineup because the "witness", Jason Mwewa, was "sweating" even though he could not pick FREDDIE MCGRIER in the lineup. *Bates Stamp 114, Complaint Follow-up 56.*

73.     Upon information and belief, after spending further several hours in Precinct Plaintiff was transferred to Central Booking, criminally processed and placed in dirty, overcrowded and infested cell where he spent approximately sixteen (16) hours, until next afternoon September 14, 2012 when he was taken in front of the judge and arraigned.

74.     Upon information and belief, after seeing judge Plaintiff **FREDDIE MCGRIER** was transported to Otis Bantum Correctional Center (OBCC) located at Rikers Island Correctional Facility.

75.     On September 19, 2012 Plaintiff was indicted by Grand Jury in the County of Bronx.2

---

2 In *Johnson v. Watkins,* 101 F3d 792 (1996), the Court reasoned that probable cause in pre-trial hearings cannot be

76.    Upon information and belief, during his incarceration in Riker's Island Plaintiff was moved to the different housing facilities within the institution.

77.    Upon information and belief, Plaintiff **FREDDIE MCGRIER's** trial was adjourned numerous times for several years.

78.    Upon Information and belief, **FREDDIE MCGRIER** was unconstitutionally incarcerated in Rikers Correctional Facility for more than three (3) years awaiting trial from September 14, 2012 through October 27, 2015.

79.    Upon information and belief, any "witness" that allegedly arose post-arraignment and during trial was unreliable, incredible and uncorroborated.

80.    Upon information and belief, **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA** needlessly and without cause adjourned **FREDDIE MCGRIER's** trial as many as seven times in violation of his CPL § 30.30 rights guaranteeing speedy trial.

81.    Upon information and belief, **FREDDIE MCGRIER** was falsely imprisoned and any minutiae of probable cause that may have ever existed certainly dissipated on May 15, 2015 when a DNA definitively proved that Mr. McGrier was not present in the subject gas station on September 4, 2012. *Defendants Bates Stamp 200-201.*

82.    Upon information and belief, **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA** failed to compel the Bronx Homicide Lab Unit to test the DNA samples until April, 2015 and the samples were not examined until May 10, 2015.

83.    Despite this further overwhelming evidence exculpatory evidence to exonerate **FREDDIE MCGRIER, ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON,**

given issue preclusive effect against a defendant subsequently acquitted of all charges. This is predicated on the fact that defendant has no opportunity to obtain review of those issues decided against him until a jury verdict is entered.

ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM ( SHIELD # 1916),continued their assault on injustice with the continued malicious prosecution and false imprisonment of **FREDDIE MCGRIER** which was solely the product of improper motives to acquire guilt in a high profile case regardless of the evidence.

84.   The continuous delays maximized Mr. McGrier's anxieties and concerns and continued to impair the ability of the accused, Mr. McGrier to defend himself. As a result of the delay, Mr. McGrier was unable to adequately prepare his case.

85.   As a result of these dilatory delays and the gravity of the chargers levied against **FREDDIE MCGRIER**, he was forced to take a plea deal in an unrelated charge from an August 23, 2012 incident.  His plea deal was commenced out of desperation to resolve the more severe and punitive charges for the criminal allegations of homicide.  As a result of the false arrest and malicious prosecution committed against **FREDDIE MCGIER** by **DEFENDANTS-ADAs and Police Officers,** Plaintiff was stripped of the opportunity to effectively defend the charges stemming from the August 23, 2012 incident without taking a plea deal for those allegations.

86.   Upon information and belief, the defendants' unreadiness for this trial was directly and/or mostly attributable to "the People" and thus chargeable to the defendants for speedy trial purposes.

87.   Upon information and belief, there was a lack of prosecutorial diligence.

88.   Upon information and belief, Plaintiff's trial did not start until on or around October, 2015 (more than thirty-seven (37) months after his arrest).

89.   Upon information and belief, during the trial, there was not a scintilla of evidence proving Plaintiff **FREDDIE MCGRIER's** involvement in the above mentioned incident.

90.   At the conclusion of trial, Plaintiff was found not guilty and acquitted of all charges on October 27, 2015.  Thus, the charges were terminated in Plaintiff's favor.

91.   Upon information and belief, as a result of the foregoing, Plaintiff was deprived of the opportunity to pursue his career.

92.   Upon information and belief, Plaintiff was wrongfully incarcerated for approximately thirty seven (37) months.

93.   Upon information and belief, during his custody and care of Department of Corrections, namely at Rikers Island Correctional facility Plaintiff **FREDDIE MCGRIER** was constantly deprived of his liberty and rights, namely when he was subjected to numerous acts of assault and acts of violence by inmates, sexual and physical abuse, unconstitutional conditions of confinement, placement in solitary confinement as well as subjected to excessive force, battery, intimidation and harassment by Correction Officers.

94.   Upon information and belief and during his time in incarceration, Plaintiff was subjected to continuous acts of retaliation by Defendants, namely in the form of "looking the other way" during inmate-on-inmate abuse and altercations by failing to intervene to stop the fighting.

95.   Upon information and belief and during his time incarcerated, Plaintiff was subjected to continuous acts of retaliation by Defendants, namely in the form of punishments, and unjust, exaggerated, fabricated and deceptive infractions and disciplinary actions, including, but not limited to:

- Upon information and belief, on June 3, 2013, **Defendant ROBLES** alleged to have found "contraband" during a routine cell search.  Plaintiff maintains his innocence.  On June 6, 2013, a Hearing was held regarding a retaliatory infraction and a Disciplinary Disposition was unjustly imposed on Plaintiff.
- Upon information and belief, on December 11, 2012 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on January 14, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on February 10, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on March 16, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on April 19, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on April 20, 2013, there was an injury report filed citing that Mr. McGrier was involved in an altercation with an inmate.
- Upon information and belief, on April 29, 2013, there was an injury report filed.
- Upon information and belief, on May 27, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on June 3, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on July 3, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on July 13, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on July 15, 2013 during extraction from his designated cell, Mr. McGrier was brutally and viciously assaulted and battered.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff. Following said incident, a retaliatory infraction was imposed on Plaintiff.  Further details explained *infra*.
- Upon information and belief, on August 5, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on October 9, 2013 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on October 12, 2013 as a result of Defendants' negligence, Mr. McGrier slipped and fell on a wet floor.  Upon information and belief, no signs or warnings informing about existence of the said condition were present, at said location and time. As a result he received injuries including, but not limited to his Right Shoulder and Lower Back. A timely Notice of Claim was filed with New York City Comptroller's Office on December 27, 2013.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on October 31, 2013 Mr. McGrier was assaulted and battered during extraction from his cell and as a result he received injuries including, but not limited to Headaches and Right Wrist. Additionally, following said incident a

retaliatory infraction was imposed on Plaintiff.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.

- Upon information and belief, on November 14, 2013, there was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on January 23, 2014 Plaintiff **FREDDIE MCGRIER** was assaulted and battered by Defendants and as a result received injuries including, but not limited to headaches and right wrist.   Upon information and belief, on January 23, 2014 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on March 30, 2014 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, April 10, 2014 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on May 15, 2014 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on May 29, 2014 as a result of Defendants' negligence, Plaintiff suffered an injury to his finger.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on June 8, 2014 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on July 9, 2014 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on August 13, 2014 a retaliatory infraction was imposed on Plaintiff.
- Upon information and belief, on September 14, 2014 Mr. McGrier was assaulted and battered by Defendants.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on September 15, 2014 Plaintiff was assaulted, battered and sprayed with Chemical Agent.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on September 16, 2014 Mr. McGrier was assaulted, battered and sprayed with Chemical Agent.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on September 27, 2014 Mr. McGrier was assaulted and battered during extraction from his cell.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on December 19, 2014 Plaintiff was assaulted and battered by individually named Defendants.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on December 22, 2014 Mr. McGrier suffered a seizure while in care and custody of Defendants.  As a result, he suffered injuries to his back as well as headaches.
- On January 17, 2015, there was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.

- Upon information and belief, on January 20, 2015 Mr. McGrier was assaulted and battered by Defendants during extraction from his cell. There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on February 10, 2015 Plaintiff was assaulted and battered by individually named defendants.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on March 29, 2015 Plaintiff was splashed with boiling hot water by Correction Officer, which caused permanent injuries and scarring to his torso.3
- Upon information and belief, on April 29, 2015 there was an injury report filed regarding the incident where Mr. McGrier was splashed with boiling hot water by Correction Officer, which caused permanent injuries to his torso.
- Upon information and belief, on September 7, 2015 Mr. McGrier was assaulted, battered and sprayed with Chemical Agent.  There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.
- Upon information and belief, on November 17, 2015 Mr. McGrier was assaulted and battered during extraction from his cell. There was an injury report filed citing that Mr. McGrier was involved in "use of force" with DOC staff.

96.    At some point during his incarceration, Mr. McGrier was diagnosed with adjustment disorder with anxiety.

97.    Upon information and belief, on July 15, 2013 during extraction from his designated cell, Mr. McGrier was brutally and viciously assaulted and battered by **DEFENDANTS- CORRECTION OFFICERS**.   Upon information and belief, as result Plaintiff **FREDDIE MCGRIER** received numerous injuries, including but not limited to Facial and Right Orbital Contusion, Forehead Contusion, Contusion of Eyelids, Bruises, Bumps, Cuts and Swelling.  A Timely Notice of Claim was filed with New York City Comptroller's Office on August, 26, 2013.

98.    Upon information and belief, Defendants **CORRECTION OFFICERS** failed to intervene during Mr. McGrier's assaults, punishments, retaliatory infractions and overall abuse.

---

3 Plaintiff acknowledges that he has obtained a settlement for injuries sustained as a result of the March 29, 2015 incident.  Thus, this event is listed only for purposes of demonstrating a pattern of abuse demonstrating continuous patterns of multiple acts of violence to be evaluated for claims of Intentional Infliction of Emotional Distress, other emotional damages and with regards to claims of *Monell* and/or *Respondeat Superior* against the City of New York.

99.     Upon information and belief, Plaintiff has suffered severe and significant personal, emotional and psychological injuries and was otherwise damaged.

100.    As a result of many of the beatings he received by Defendants and inmates, it was medically necessary for him to be examined, treated and prescribed medication.

101.    Upon information and belief, during his incarceration in Riker's Island, Mr. McGrier was placed under Suicide Watch List several times.

102.    Mr. McGrier requested educational services from the Correction Department. *See, D-2402*

103.    Upon information and belief, Plaintiff was placed in solitary confinement for several extended periods of time during his incarceration, without reason or just cause.

104.    Upon information and belief, Plaintiff even after release, was and currently is mandated to attend numerous court appearances with regards to the additional charges he received while in prison.4

105.    Upon information and belief, Plaintiff attended many hearings during his confinement at Rikers Island and witnessed many acts of perjury by the Defendants-Corrections Officers as well as was deprived of proper due process.

106.    Plaintiff was present for the duration of his criminal trial.

107.    Plaintiff was acquitted of all charges on or about October 27, 2015.

108.    A Notice of Claim was filed timely on January 20, 2016 against The City of New York, The New York City Police Department and The New York City Department of Corrections. *See, Notice of Claim dated January 15, 2016 and filed on January 20, 2016.*

---

4 Plaintiff acknowledges that all events/incidents/infractions described from his period of incarceration leading up to and including his date of release are also listed for purposes of demonstrating a pattern of abuse. Mr. McGrier acknowledges that the Statute of Limitations expired before some of the dates mentioned and will only be listing acts that are barred by SOL as demonstrative of continuous patterns of multiple acts of violence against Mr. McGrier as it applies to his claims for Intentional Infliction of Emotional Distress and other psychological/emotional damages as well as towards *Monell* claims against the City of New York.  The events/incidents/infractions described from July 15, 2013 through his release date are viable.

109.   Even after release, Plaintiff was mandated to attend numerous court appearances with

regards to the additional charges (retaliatory infractions) he received while in prison, many of

which were dismissed outright.

110.   During those thirty – seven (37) months incarcerated, Mr. McGrier was assaulted, battered,

intimidated and in fear for his life and well-being.  These fears continued subsequent to his

acquittal because even after his release, he was mandated to attend court appearances with

regards to the additional unfounded charges he received while in prison.  In addition to his

permanent physical injuries, he suffers and continues to suffer from severe post-traumatic

stress and other emotional damages.5

### AS AND FOR A FIRST CAUSE OF ACTION
DEPRIVATION OF RIGHTS UNDER THE
UNITED STATES CONSTITUTION and 42 U.S.C. § 1983
ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT
ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441)
DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON
(TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825), DETECTIVE
THOMAS AASHEIM (SHIELD # 1916), CORRECTION OFFICER DANIEL ROBLES
(SHIELD #13214) AND CAPTAIN "JOHN" THOMPSON (SHIELD #86)

111.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the

same force and effect as though fully stated herein.

112.   By their conduct and actions in arresting, searching, imprisoning, failing to intercede on

behalf of Plaintiff and in failing to protect him from the unjustified and unconstitutional

treatment he received at the hands of Defendants acting with animus, and under color of law

and without lawful justification, intentionally, maliciously, and with deliberate indifference to

and/or a reckless disregard for the natural and probable consequences of their acts, caused

---

5 Despite Plaintiff's due diligence, Plaintiff still does not have all of the names of the Correction Officers nor all or
any of the actual incident reports citing exactly which officers were involved.  Therefore, Plaintiff reserves his right
to Amend the Complaint at a later date when that information is or becomes available and submits that the relation-
back doctrine is applicable in this scenario should the events fall within the Statute of Limitations.  Plaintiff
qualified the John Does in the original complaint as "Correction Officers John Does."

injury and damage in violation of Plaintiff's due process clause and constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

113.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**AS AND FOR A SECOND CAUSE OF ACTION**
**MALICIOUS PROSECUTION UNDER THE**
**UNITED STATES CONSTITUTION and 42 U.S.C. § 1983 AND NEW YORK STATE**
**CLAIM OF MALICIOUS PROSECUTION AS AGAINST**
**ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT**
**ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441)**
**DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON**
**(TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825), DETECTIVE**
**THOMAS AASHEIM (SHIELD # 1916)**

114.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

115.    By the actions described above, Defendants **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825)** and **DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** initiated a prosecution against Plaintiff Mr. McGrier.

116.    By the actions described above, Defendants **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS**

(TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and **DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** lacked probable cause to believe the proceeding could succeed.

117. By the actions described above, Defendants **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825)** and **DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** caused Plaintiff to be maliciously prosecuted without any probable cause, without reasonable suspicion, without any proper claims, without any right or authority to do so, illegally and with malice.

118. **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** arrested and issued legal process in order to obtain collateral objectives outside the legitimate ends of the legal process and intimidated Plaintiff Mr. McGrier for their personal interest and further to prevent Plaintiff from disclosing the aforementioned evidence of their misconduct.

119. Even after the prosecution was commenced and Plaintiff was indicted, **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD**

GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM (SHIELD # 1916) failed to discontinue the prosecution despite a mountain of exculpatory evidence which dissipated and/or eliminated any probable cause that may have ever existed against FREDDIE MCGRIER.

120. ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA were directly involved in the investigation process and further coordinated with the NYPD to try to collect identifications, witness statements and DNA evidence.

121. Despite their titles ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA acted within the province of investigatory work pre-indictment and their actions are not immunized since they acted outside the scope of their judiciary and prosecutorial duties and responsibilities.

122. ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM (SHIELD # 1916) failed to obtain any corroborating evidence and examine the reliability and/or veracity of informant/tipsters Isaiah Taveres and Raymond Velez's nor the witness at trial's statements.

123. The officers and ADAs had a duty to assess the reliability of the witnesses. There were times during this prosecution where circumstances called into doubt the witness' veracity, which would have required a reasonable person in defendants' position to investigate the allegations and corroborate them. In this case, these defendants did not properly investigate the allegations.

124.   The failure to make a further inquiry when a reasonable person in that situation would have done so is evidence of lack of probable cause in this case.

125.   **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825)** and **DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** also failed to examine the relationship between **FREDDIE MCGRIER** and the informants/tipsters and thus their statement could not have met the probable cause threshold to lead to an arrest indictment and further prosecution of **FREDDIE MCGIER.**

126.   **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA's** actions were not limited to those which were "intimately associated with the judicial phase of the criminal," and are thus not immune from liability. *Imbler v. Pachtman,* 424 U.S. 409 (1976).

127.   In applying a "functional approach" to the nature of the actions of **ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA** it is clear that they served in an investigatory and prosecutorial role and are not immune from liability for malicious prosecution and wrongful imprisonment. *Buckley v. Fitzsimmons*, 509 U.S. 259 (holding the identity of the actor is irrelevant compared to the actions of the actor).

128.   The prosecution was ultimately terminated in favor of Plaintiff Mr. McGrier.

129.   The investigation and prosecution were palpably improper.

130.   The malicious prosecution continued from 2012 through 2015 and the police officers and detectives of the City of New York were active participants for the prosecution of the pre-

trial (if any), and trial.

131.   As a result of the foregoing, Plaintiff Mr. McGrier was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

### AS AND FOR A THIRD CAUSE OF ACTION
### MALICIOUS PROSECUTION UNDER THE
### UNITED STATES CONSTITUTION and 42 U.S.C. § 1983 AND
### NEW YORK STATE CLAIM OF MALICIOUS PROSECUTION
### AS AGAINST
### CORRECTION OFFICER DANIEL ROBLES
### (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND
### CORRECTION OFFICERS JOHN DOE # 1-5

132.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

133.   By the actions described above, Defendants **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5** initiated prosecutions and retaliatory actions against Plaintiff Mr. McGrier.

134.   **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5** lacked probable cause to believe the proceedings in the forms of the hearings could succeed.

135.   By the actions described above, Defendants **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5** caused Plaintiff to be maliciously

prosecuted without any probable cause, without reasonable suspicion, without any proper claims, without any right or authority to do so, illegally and with malice.

136.   **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5** disciplined and issued legal process in order to obtain collateral objectives outside the legitimate ends of the legal process and intimidated Plaintiff Mr. McGrier for their personal interest and further to prevent Plaintiff from disclosing the aforementioned evidence of their misconduct.

137.   The disciplinary infractions and prosecutions were retaliatory and thus, palpably improper. Disciplinary hearings and/or administrative hearings can constitute a judicial proceeding for the purpose of malicious prosecution when the plaintiff's civil liberties are at risk and some testimony is potentially offered under oath. <u>Groat v. Town of Glenville</u>, 73. A.D2d. 426 (1980). There are also prior examples of malicious prosecution claims against corrections officers for the initiation of criminal prosecution surviving summary judgment. <u>Allen v. City of New York</u>, 480 F. Supp. 2d 689 (S.D.N.Y. 2007) ("*Material issues of fact, as to whether allegedly false claims by corrections officer that prison inmate assaulted him were basis of decision to prosecute inmate for assault, precluded summary judgment on inmate's malicious prosecution claim against officer under § 1983. 42 U.S.C.A. § 1983*") ("Material issues of fact, as to whether decision to prosecute inmate for assaulting corrections officer was based on bad faith or perjury of officer rather than existence of probable cause to arrest for assault, precluded summary judgment on inmate's malicious prosecution claim under § 1983").

138.   After realizing their mistakes in the mishandling of Mr. McGrier, the defendants compounded their wrongdoings by pursuing the unfounded infractions, for what was an obvious attempt at preventing a potential future disciplinary charge for excessive force,

assault/battery from the use of force in each instance.6

139.   A timely Notice of Claim was filed with the City of New York.

140.   Upon information and belief, Defendant **ASSISTANT DISTRICT ATTORNEY DEREK LYNTON AND ASSISTANT DISTRICT ATTORNEY RAY VALERIA** acted as investigators not solely advocates.

141.   The malicious prosecution continued from 2012 through 2015 and the police officers and detectives of the City of New York were active participants for the prosecution of the pre-trial (if any), and trial and the Correction Officers were active participants for the prosecution of the infractions.

142.   The legal process was terminated in favor of Plaintiff.

143.   As a result of the foregoing, Plaintiff Mr. McGrier was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A FOURTH CAUSE OF ACTION
### STATE CLAIM OF FALSE ARREST AND WRONGFUL IMPRISONMENT

144.   Plaintiff **FREDDIE MCGIER** repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

145.   By the actions described above, Defendants **THE CITY OF NEW YORK, ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY   RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825) and DETECTIVE THOMAS AASHEIM (SHIELD # 1916)** caused

---

6 The right to not be deprived of liberty based upon the fabrication of evidence by investigating officers is also a well established right. *Zahrey v. Coffey,* 221 F.3d 342, 349 (2d Cir. 2000).

Plaintiff **FREDDIE MCGRIER** to be falsely arrested and falsely imprisoned without probable cause, without suspicion, illegally, without any proper claims and without any right or authority to do so. The acts and conduct of Defendants were the direct and proximate cause and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws of the Constitution of the State of New York.

146.    A Notice of Claim was timely filed.

147.    Upon information and belief, the photo array was palpably improper and suggestive.

148.    Upon information and belief, there was no probable cause to keep Plaintiff following a false identification in the lineup. "Absent a showing of probable cause, the police may nevertheless, forcibly detain someone if they have information, which, while not amounting to probable cause to justify an arrest, provides with reasonable suspicion that a crime has been committed". People v Martinez, 80 NY2d 444 [1992] See Also. of People v Rodriguez, 7 Misc 3d 1005(A) [Sup Ct 2005]( *defendant suspect was forcibly brought in for a lineup without probable cause*).7

149.    As a result of the foregoing, Plaintiff **FREDDIE MCGIER** was deprived of his liberty, suffered a loss of quality and/or enjoyment of life, physical injury, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

---

7 In Akande v City of New York, 275 AD2d 671 [1st Dept 2000]"Probable cause existed for arrest defeating false arrest and battery claims and city was liable for false imprisonment for a period between the conclusion of police laboratory tests showing package contained no illegal substances and arrestee's release following arraignment. *See also*, Broughton v State, (prima facie rule according presumption of validity to arrest because of arraignment and subsequent indictment was not applicable to false imprisonment actions; that presumptive unlawfulness of warrantless arrests coupled with evidence of intentional, unprivileged, nonconsensual confinement of plaintiffs by defendants was sufficient to establish torts of false imprisonment) (Unlike malicious prosecution claim, false imprisonment does not require malice). See also Feinberg v Saks & Co., 56 NY2d 206 [1982]. "The absence of probable cause to continue to detain plaintiff established, as a matter of law, plaintiff's cause of action for false imprisonment, which does not require a showing of malice (*see,* Broughton v. State of New York, supra) for the period between the conclusion of the Police Department's laboratory test and plaintiff's release after her arraignment". Akande v City of New York.

## AS AND FOR A FIFTH CAUSE OF ACTION
### DERELICTION OF DUTY. DELIBERATE INDIFFERENCE
### and FAILURE TO INTERCEDE/INTERVENE

150.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

151.    Defendants **THE CITY OF NEW YORK, ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825), DETECTIVE THOMAS AASHEIM ( SHIELD # 1916), CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5** were under a duty of safeguarding the public and ensuring the appropriate execution of Defendant's role.

152.    Plaintiff duly relied on Defendants' fulfillment of their New York City Policing and New York City Correctional duties.

153.    Defendants had an affirmative duty to intercede when Plaintiff's constitutional rights were being violated in Defendants' presence.

154.    At the time of the incidents, **DEFENDANTS** were observing and aware of the wrongful acts against Plaintiff.

155.    At the time of the incident, **DEFENDANTS** neglected to intervene on Plaintiff's behalf in dereliction of their duty to Plaintiff and in depraved indifference to Plaintiff's well-being.

156.    **DEFENDANTS** violated Plaintiff's constitutional rights when they failed to intercede and prevent the violation or further violation of Plaintiff's constitutional rights and the injuries or further injuries caused as a result of said failure.

34

157.   Some **DEFENDANTS** were present but did not necessarily actively participate in the aforementioned unlawful conduct observed, had an opportunity to prevent such conduct, had a duty to intervene and failed to do so.

158.   As a result of the foregoing, Plaintiff was deprived of his liberty, suffered a loss of quality and/or enjoyment of life, economic injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

## AS AND FOR A SIXTH CAUSE OF ACTION
### STATE CLAIM OF NEGLIGENCE

159.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

160.   **DEFENDANTS** negligently caused emotional injuries and otherwise damaged Plaintiff. The acts and conduct of Defendant were the direct and proximate cause of injury to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

161.   There was official negligence in bringing Mr. McGrier, the accused to trial.  Even if Mr. McGrier cannot specifically demonstrate exactly how the delay to trial has prejudiced him, there is still negligence in the unacceptable reasons behind delaying the criminal prosecution of Mr. McGrier. 8

162.   There is a persistent neglect in concluding a criminal prosecution in this case.  Moreover, this negligence has threatened and did threaten the fairness of the accused's trial.

163.   As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

---

8 *Doggett v United States*, 505 US 647, 656-57, 112 S Ct 2686, 2693, 120 L Ed 2d 520 [1992].

## AS AND FOR A SEVENTH CAUSE OF ACTION
### STATE CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL HARM AND/OR DISTRESS

164.  Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

165.  Defendants **THE CITY OF NEW YORK, ASSSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825), DETECTIVE THOMAS AASHEIM ( SHIELD # 1916), CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5,** intentionally caused continuous emotional distress and damage to Plaintiff.

166.  The acts and conduct of Defendants were the direct and proximate cause of continuous emotional distress emotional injury to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

167.  Upon information and belief, Defendants committed multiple acts against Plaintiff, which invaded his interests and inflicted injuries upon him throughout all stages of investigation, the continuous detention and the hearings while in prison, and trial(s), which cumulatively amounted to intentional infliction of emotional harm and/or distress.

168.  A timely Notice of Claim was filed with the City of New York.

169.  Because Plaintiff was subject to a sustained pattern of abuse, the IIED in this instance is continuing in nature, therefore, the Continuing Tort Doctrine applies and thus,

the statute of limitations begins to run *after the last actionable abuse has occurred.*[9]

170.   Courts have held that continuous and coercive harassment *can* establish an IIED cause of

action. *Alexander v. Unification Church of America,* 634 F.2d 673, 678–679 (2d Cir.1980) (filing

of harassing lawsuits, constant surveillance, patrolling of plaintiffs' homes);*Green v. Fischbein*

*Olivieri Rozenholc & Badillo,* 119 A.D.2d 345, 507 N.Y.S.2d 148 (1st Dep't 1986) (baseless

eviction proceedings against plaintiff-tenant by landlord, disruption in services, deterioration

of living conditions, interference with mails, verbal abuse of plaintiff and his guests). *But*

*see, Gay v. Carlson,* 60 F.3d 83, 89 (2d Cir.1995) (finding plaintiff had not established an IIED

claim where "[a]ll that plaintiff alleges that any of the defendants has done is lodge official

complaints about plaintiff's conduct or discuss the basis of those complaints with others.").

171.   Because     many     of     these     "last     actionable     acts"     occurred     within

the statute of limitations period,     the     action     is     not     time-barred. *Cf. Leonhard v.  United*

*States,* 633  F.2d  at  613 (holding  that  under  general  principles  of  New  York  law,

the statute of limitations " 'runs from the commission of the last wrongful act.' ")(citations

omitted).

172.   Hon.  Denise  L.  Cote  of  this  district  recently  reached  a  similar  conclusion  on  this

issue. *Bonner v. Guccione,* 94 Civ. 7735, slip. op. at 7–15, 1996 WL 22355 (S.D.N.Y. January 17,

1996)(holding  where  last  act  of  an  uninterrupted  course  of  actionable  conduct  falls

within  statute  of  limitations,  plaintiff  permitted  to  assert  IIED  claim  for  entire  course  of

conduct,  even  those  acts  beyond  the  statute  of  limitations). *Cf. Leonhard v. United States,* 633

F.2d at 613 (holding that under New York law where certain continuous wrongs are alleged,

---

9 In fact, where it is alleged that the course of actionable conduct which gives rise to the IIED claim continues over a period of time, it is the *end* date of that pattern of behavior that is relevant for statute of limitations purposes. *See, Neufeld v. Neufeld,* 910 F.Supp. 977, 982-83 (S.D.N.Y. 1996)("[C]laims for IIED that allege a continuing pattern and practice of actionable     behavior     may     invoke     the     continuing tort     doctrine     to     provide     an     exemption     from the  statute  of  limitations  where  the  'last  actionable  act'  of  the  alleged  course  of  conduct  falls  within  the statute of limitations.").

the last wrongful act triggers the statute of limitations).

173.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical

injury, psychological injury and emotional distress, great humiliation, costs and expenses,

and was otherwise damaged and injured.10

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### SPECIFIC UNCONSTITUTIONAL VIOLATIONS UNDER THE 8th, 14th and 4th AMENDMENTS OF THE UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983, AND NEW YORK STATE LAW (VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE PROCESS, CRUEL AND UNUSUAL PUNISHMENT, DEVIATION FROM PROTOCOLS, INSUFFICIENT CONDITIONS OF CONFINEMENT AND EXCESSIVE FORCE)

174.    Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the

same force and effect as thought fully stated herein.

175.    Defendants **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214),**

**CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION**

**OFFICERS JOHN DOE # 1-5** individually and collectively are liable pursuant to 42

U.S.C. § 1983 for abuses against Plaintiff that shock the conscience in violation of the

Fourteenth Amendment to the United States Constitution.

176.    **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN**

**"JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN**

**DOE # 1-5,** individually and collectively are liable for abuses against Plaintiff that shock the

---

10 In making this sufficiency determination, plaintiff's IIED claims against the defendants must be evaluated in light of their entire alleged course of conduct. *Stram v. Farrell,* 223 A.D.2d 260, 265, 646 N.Y.S.2d 193, 196 (3d Dep't 1996).  While certain of Plaintiffs' allegations would not, by themselves, necessarily rise to the level of extremity and outrageousness to support an IIED claim, the defendants' total alleged course of conduct does.

conscience in violation of Article 1, § 5 of the New York State Constitution.

177. **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5** individually and collectively are liable for abuses against Plaintiff that shock the conscience in violation of New York law, rules and regulations.

178. Defendants **THE CITY OF NEW YORK, CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5**, committed excessive force upon Plaintiff on or about July 15, 2013 as described above, while in custody.

179. The above-mentioned abuse was harmful, un-consented, and unjustified and in so doing, Defendants **THE CITY OF NEW YORK, CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5**, violated the laws and Constitution of the State of New York and the United States Constitution, 42 U.S.C 1983, and otherwise violated Plaintiff's rights under New York and United States Law.

180. That by reason of the excessive force, Plaintiff was harmed physically and emotionally, all while unlawfully and illegally detained, and that Plaintiff was otherwise harmed as a result of the Defendant's actions

181. That by reason of the aforesaid committed by Defendants, Plaintiff suffered and continues to suffer physical injury and that he was otherwise damaged.

182. The individual defendants issued legal process to place Plaintiff under arrest.

183. As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

184.    Throughout the period of his imprisonment and/or detention, Plaintiff was continuously

subjected to excessive and unreasonable detention and to multiple excessive and unnecessary

and unreasonable acts of physical force (while in detention), and to unnecessary and

unreasonable and excessive terms and conditions of his imprisonment (including being put

in solitary confinement), at the hands of Defendants under the color of state law, in violation

of his rights as guaranteed under the Fourth, Eighth and Fourteenth Amendments to the

United States Constitution and the Civil Rights Act of 1871, 42 USC § 1983.

185.    In addition to the violation of Plaintiff's constitutional rights as stated above, it is clear from

the outlined allegations, there was a municipal policy or custom that caused Mr. McGrier's

injuries and the policies (specifically but not unconstitutional conditions of confinement,

excessive force, and placement in solitary confinement) were causally connected to Mr.

McGrier's deprivation of constitutional rights.11

186.    Mr. McGrier was continually subjected to harassment and violence by, *inter alia*, correction

officers, and that the officers tolerated continual harassment and violence against him by

fellow inmates. He was unlawfully put in solitary confinement – a condition that Amnesty

International has characterized as akin to torture – not one but at least ten times. Again, this

is a pattern of conduct involving multiple officers over an extended period of time, which

creates an inference that a failure to train and/or supervise existed. *Amnesty America v. Town of*

*West Hartford*, 361 F.3d 113, 130 n. 10 (2d Cir. 2004).

187.    Mr. McGrier's treatment during his confinement was the result of something more than a

single officer's misconduct. This "something more" was a custom or policy of encouraging,

---

11 In light of recent revelations about widespread brutality at Rikers Island, that discovery will reveal that an
unconstitutional custom and/or practice of officer-on-inmate violence, combined with a failure of training and
supervision, indeed existed at that jail. See Michael Winerip and Michael Schwirtz, Rikers: Where Mental Illness
Meets Brutality in Jail, N.Y. Times, July 14, 2014.

condoning or turning a blind eye to the types of misconduct complained of.

188.    Mr. McGrier's "excessive force" claim is an amalgam of physical assaults by corrections officers, inmate-on-inmate violence and punitive use of solitary confinement. Each of those components has distinct constitutional roots. *See Deshaney v. Winnebego County Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989) ("[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."). Additionally, for present purposes, they may be treated collectively.12

189.    As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific psychological and emotional injuries and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.13

### AS AND FOR A NINTH CAUSE OF ACTION
### STATE CLAIMS OF NEGLIGENCE, CARELESSNESS AND/OR RECKLESSNESS FOR THE INCIDENT DATED OCTOBER 12, 2013
#### (Slip and Fall on Wet Floor)

190.    Plaintiff Mr. McGrier repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

191.    That the aforesaid incident was due solely to the negligence, carelessness and/or recklessness of the defendants, with no negligence on the part of the Plaintiff contributing thereto.

---

12 "There is ... nothing to prevent a plaintiff from foregoing the naming of an individual officer as a defendant and proceeding directly to trial against the municipality." Wilson v. Town of Mendon, 294 F.3d 1, 7 (1st Cir. 2002).

13 In Townsley v. West Brandywine Township, 2006 WL 1147267, *5 n.2 (E.D. Pa. 2006), the court stated that "although Plaintiff has chosen to not name any individual police officers as defendants, Plaintiff has averred that individual officers of the police department and township, acting in furtherance of the polices, practices and customs of the municipal defendant, did indeed engage in unconstitutional conduct. At the motion to dismiss stage, this is sufficient to state a cognizable claim. *None of the cases cited by Defendants holds that the individual police officers referenced in the Complaint must be named as individual Defendants.*" (Emphasis added).

41

192.   That Defendant **THE CITY OF NEW YORK,** its agents, servants and/or employees, had the responsibility and obligation to maintain said premises in a safe and proper condition for the use of invitees and/or patrons lawfully upon said premises, namely and including, Plaintiff **FREDDIE MCGRIER.**

193.   That Defendant **THE CITY OF NEW YORK,** its agents, servants and/or employees were negligent in that they acted and/or failed to act in such a manner as to endanger the safety of Plaintiff; in that they acted in reckless disregard for the safety of others and this Plaintiff in particular; and in that they permitted said condition to exist on the Plaintiff without cause or justification, which caused Plaintiff to sustain serious and severe injuries.

194.   That Defendant **THE CITY OF NEW YORK,** its agents, servants and employees had the responsibility and obligation to provide proper security upon said premises.

195.   That Defendant **THE CITY OF NEW YORK** its agents, servants and/or employees, had the responsibility and obligation to provide security for the use of inmates and/or patrons lawfully upon said premises.

196.   That Defendant **THE CITY OF NEW YORK,** it's agents, servants and/or employees, , were negligent as follows: in the ownership, operation, management, maintenance and control of the aforesaid premises; in that they failed to have and keep the same in a safe and proper manner; in that they caused, allowed and permitted a dangerous condition, namely wet floors to be, exist and remain; in that they failed to install signs warning about existence of the said condition; allowed in that they failed to provide adequate, sufficient and competent security guards and/or other policing and protective personnel on the said premises; in negligently hiring security; in that they failed to properly and adequately monitor the safety of the said premises; in that they failed to have clear security procedures; in that they failed to safeguard the plaintiff and other persons lawfully and properly in the said premises; in that they acted

and/or failed to act in such a manner as to endanger the safety of plaintiff; in that they failed to intervene; in that they failed to act as reasonable and prudent persons could have and would have under the circumstances and conditions then and there prevailing; in that they acted in reckless disregard for the safety of others and this plaintiff in particular; and in that they failed to take all necessary and proper means and precautions to avoid the said slip and fall incident upon the plaintiff.

197.   That by reason of the aforesaid negligence, carelessness and/or recklessness of the Defendants, the Plaintiff was bruised and/or contused and was caused to sustain serious permanent and protracted injuries which will significantly affect the Plaintiff's life and lifestyle; suffered shock and anxiety; was rendered sick, sore, lame and disabled and was caused to seek and obtain medical aid, care and attention in an effort to cure and alleviate Plaintiff's condition.

198.   That this action falls into one or more of the exceptions as set forth in CPLR Section 1602.

199.   That as a result of the foregoing, Plaintiff was damaged in a sum which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**AS AND FOR A TENTH CAUSE OF ACTION**
**LIABILITY OF THE CITY OF NEW YORK THROUGH**
**DEPRIVATION OF RIGHTS UNDER THE**
**UNITED STATES CONSTITUTION AND 42 U.S.C. § 1983 (INCLUDING, BUT NOT**
**LIMITED TO MALICIOUS PROSECUTION AND EXCESSIVE FORCE)**
**CLAIM FOR *MONELL LIABILITY AND***
**LIABILITY OF THE CITY OF NEW YORK**
**VIA THEORY OF *RESPONDEAT SUPERIOR***
**FOR ANY APPLICABLE STATE CLAIMS**

200.   Plaintiff repeats and reiterates the allegations set forth in the foregoing paragraphs with the same force and effect as though fully stated herein.

201.   At all times material to this complaint, Defendant **THE CITY OF NEW YORK** acting through its police department and through Defendants, **ASSSISTANT DISTRICT**

**ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA, DETECTIVE ROBERT HENN (TAX ID #906441) DETECTIVE FELIX RAMOS (TAX ID #911140), LIEUTENANT RICHARD GIBSON (TAX ID #899278), DETECTIVE ANTHONY D'AMATO (SHIELD #825), DETECTIVE THOMAS AASHEIM ( SHIELD # 1916), CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5** had in effect actual and/or de facto policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

202.   At all times material to this complaint, Defendant **THE CITY OF NEW YORK** acting through its police department and through Defendants had in effect and/or *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise and discipline employees and police officers, and of failing to inform the individual Defendants' supervisors of the need to train, screen, supervise and discipline said Defendants.   The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

203.   Defendant **THE CITY OF NEW YORK** acting through its police department, department of Correction and through individually names Defendants, being aware that such lack of training, screening, supervision, and discipline leads to improper conduct, acted with deliberate indifference in failing to establish a program of effective training, screening, supervision and discipline. Defendant **THE CITY OF NEW YORK** being aware that the persistent and substantial risk of improper detention of persons based upon insufficient or incorrect information, and effective training, screening, supervision and discipline would lessen the likelihood of such occurrences. There are recurrent circumstances which involve

such potential danger to the constitutional rights of citizens, more specifically Plaintiff and which are officially tolerated by Defendant **THE CITY OF NEW YORK**. Such policies, practices, customs or usages were a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the harm/damages alleged herein, in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

204.    In this case, there was: Police witnesses failing to make full and complete statements – witness tampering and/or intimidation; Detectives withholding evidence and/or misrepresenting or falsifying evidence; Overall inadequate police work and inadequate prosecutorial work-up of the case; and no warrant for Mr. McGrier's arrest, at least none that Plaintiff was ever showed.

205.    In this case, Defendants **ASSISTANT DISTRICT ATTORNEY DEREK LYNTON, ASSISTANT DISTRICT ATTORNEY RAY VALERIA** acted as an investigator not solely an advocate and were complicit in witness tampering and/or    intimidation withholding of evidence and/or misrepresenting or falsifying evidence; Overall inadequate police work and inadequate prosecutorial work-up of the case. The District Attorney acts as a County rather than a State policymaker where he acts as the manager of this office. See Walker v. City of New York, 974 F. 2d 293, 301 (2d Cir. 1992); See also Myers v. County of Orange, 157 F.3d 66, 76 (2d Cir. 1998). In New York City, the District Attorney acts as a City policymaker. Walker, 974 F.2d. at 301. As such claims of constitutional injury based on a pattern, practice and/or custom of the District Attorney's office are cognizable pursuant to 42 U.S.C. § 1983.

206.    **THE CITY OF NEW YORK** failed to train Defendants **ASSISTANT DISTRICT ATTORNEY DEREK LYNTON** and **ASSISTANT DISTRICT ATTORNEY RAY**

**VALERIA** to: (a) refrain from ignoring evidence of criminal defendant's innocence; (b) refrain from misrepresenting, withholding, falsifying evidence; (c) exercise care and thoroughness in the investigation and prosecution of a case of murder involving no other evidence but identifications; (d) accurately identify and handle exculpatory material; and (e) refrain from obtaining indictments in bad faith and without probable cause.

207.   The District Attorney's office further knew to a moral certainty that its employees and the NYPD would confront these situations and that training would help them make the correct decision and those incorrect decisions were likely to lead to constitutional violations.

208.   The acts complained of were carried out by the aforementioned defendants in their capacities as police officers and officials including **ASSISTANT DISTRICT ATTORNEY DEREK LYNTON,** and **ASSISTANT DISTRICT ATTORNEY RAY VALERIA** pursuant to customs, policies, usages, practices, procedures and rules of the City and NYPD, all under the supervision of ranking officers of the NYPD.

209.   The aforementioned customs, practices, procedures and rules of the City and NYPD include, but are not limited to: 1) arresting persons known to be innocent in order to meet "productivity goals";14 2) falsely swearing out criminal complaints and/or lying and committing perjury during sworn testimony to protect other officers and meet productivity goals; 3) failing to supervise, train, instruct and discipline police officers thereby encouraging their misconduct and exhibiting deliberate indifference towards the   constitutional rights of persons within the officers' jurisdiction; 4) discouraging police officers from reporting the corrupt or unlawful acts of other officers; 5) retaliating against officers who report police misconduct; and 6) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented with proper supervision.

---

14 Police perjury and falsification of official records has been concluded to be the most common form of police corruption.

210.   In this case, pursuant to these well-known policies, practices or customs, defendants in this case felt empowered to arrest Plaintiff, further detain and issue legal process without probable cause and essentially manufacture an identification of Plaintiff as the suspect.

211.   At the time of the aforementioned constitutional violations, the **THE CITY OF NEW YORK** and NYPD were and had been on notice of such unconstitutional conduct, customs, and de facto policies, such that the failure of City and NYPD to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the police come in contact. In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, documented in part infra, the need for more effective supervision and other remedial measures was patently obvious, but the **THE CITY OF NEW YORK** and NYPD and DA made no meaningful attempt to prevent future constitutional violations.

212.   The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented by the following civil rights actions and parallel prosecutions of police officers:

a) Colon v. City of New York, 9-CV-0008 (JBW)(E.D.N.Y) (in an Order dated November 29, 2009 denying the City's motion to dismiss on Iqbal/Twombley grounds, wherein the police officers at issued were and prosecuted for falsifying evidence, the Honorable Jack B. Weinstein wrote:

'Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration— through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged.'

b) <u>McMillan v. City of New York</u>, 04-cv-3990 (FB)(RML) (E.D.N.Y.)(officers fabricated evidence against an African-American man in Kings County and initiated drug charges against him, despite an absence of an quantum of suspicion);

c) <u>Richardson v. City of New York</u>, 02-CV-3651 (JG)(CLP) (E.D.N.Y.)(officers fabricated evidence including knowingly false sworn complaints, against an African-American man in Kings County and initiated drug charges against him, despite an absence of any quantum of suspicion);

213.   The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the practice or custom of officers lying under oath, falsely swearing out criminal complaints or otherwise falsifying or fabricating evidence, are further evidenced, inter alia, by the following:

a) Morgan Cloud, The Dirty Little Secret, 43 EMORY L.J. 1311, 1311-12 (1994) ("Judges, prosecutors, defense lawyers, and repeat offenders all know that police officers lie under oath."); Jerome H. Skolnick, Deception by Police, CRIM. JUST. ETHICS, Summer/Fall 1982, at 40, 42 (concluding that police "systematic[ally]" perjure themselves to achieve convictions); ALAN M. DERSHOWITZ, THE ABUSE EXCUSE 233 (Hachette Book Group 1994) (suggesting that "recent disclosures about rampant police perjury cannot possibly come as any surprise" to those who have practiced criminal law in state or federal courts); ALAN M. DERSHOWITZ, THE BEST DEFENSE xxi-xxii (Random House 1983) ("Almost all police lie about whether they violated the Constitution in order to convict guilty defendants."); Deborah Young, Unnecessary Evil: Police Lying in Interrogations, 28 CONN. L. REV. 425, 427 (1996) (asserting that "the reported cases of police lying represent only a fraction of the actual cases in which police lying occurred"); David Kocieniewski, Perjury Dividend-A Special Report, N.Y. TIMES,   Jan.5, 1997, at A1 (noting that according to one New York police officer, "lying under oath was standard procedure"); Lie Detectors Could Curb Police Perjury, USA TODAY, Aug. 1, 1996, (Magazine), at 13 ("[M]any experienced trial lawyers have said they believe police officers frequently lie on the stand."); Joseph D. McNamara, Has the Drug War created an   Officer Liars' Club?, L.A. TIMES, Feb. 11, 1996, at M1 (noting recent perjury scandals have surfaced in police departments in Los Angeles, Boston, New Orleans, San Francisco, Denver, New York, and other large cities; and stating "[H]undreds of thousands of law-enforcement officers commit felony perjury every year testifying about drug arrests.").

b) The Mollen Commission concluded that police perjury and falsification of official records is probably the most common form of police corruption facing the criminal justice system.

It concluded:

Regardless of the motives behind police falsifications, what is particularly troublesome about this practice is that it is widely tolerated by corrupt and honest officers alike, as well as their superiors. Corrupt and honest officers told us that their supervisors   knew or should have known about falsified versions of searches and arrests and never questioned them.1 {…} What breeds this tolerance is deep-rooted perception among many officers of all ranks within the Department that there is nothing really wrong with compromising the facts to fight crime in the real world. Simply put, despite devastating consequences of police falsifications, there is a persistent belief among officers that it is necessary and justified, even if it is unlawful. As one dedicated officer put it, police          officers often view falsification as, to use his words, "doing God's work" – doing whatever it takes to get the suspected criminal off the streets. This is so entrenched, especially in high-crime precincts, that when investigators confronted one recently arrested officer with evidence of perjury, he asked in disbelief, "What's wrong with that? They're guilty." *See,* Mollen Commission Report pgs 36-41.

214.   The existence of the aforesaid unconstitutional customs and policies, specifically with regard to "productivity goals," may be further inferred from the following: Deputy Commissioner Paul J. Browne has repeatedly admitted that NYPD commanders are permitted to set "productivity goals."15

215.   The existence of the aforesaid unconstitutional customs and practices, specifically with regard to the failure to supervise, train, instruct, and discipline police officers, encouraging their misconduct, and exhibiting deliberate indifference towards the constitutional rights of persons with whom officers come into contact are further evidenced, inter alia, by the following:

a) In response to the Honorable Judge Weinstein's ruling of November 25, 2009 in Colon v. City of New York, 09-CV-00008 (E.D.N.Y.), in which he noticed a "widespread… custom or policy by the city approving illegal conduct" such as lying under oath and false swearing, NYPD Commissioner Raymond Kelly acknowledged, "When it happens, it's not for personal gain. It's more for convenience."

b) Regarding Defendant City's tacit condonement and failure to supervise, discipline or provide remedial training when officers engage in excessive force, the Civilian Complaint Review Board is a City agency, allegedly independent of the NYPD, that is

_____

15 Jim Hoffer NYPD Officer claims pressure to make arrests WABC·TV Eyewitness News, March 22010, available at http://abclocal.go.com/Wabc/story?section=news/investigators&id=73053S6 ("Police Officers like others who receive compensation are provided productivity goals and they are expected to work").

responsible for investigating and issuing findings on complaints of police abuse and misconduct.16

216.    The existence of the above-described de facto unlawful policies and/or well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officers and officials of the NYPD and defendant **THE CITY OF NEW YORK**, including without limitation, the Police Commissioner.

217.    The actions of Defendants, resulting from and taken pursuant to the above-mentioned de facto policies and/or well-settled and widespread customs and practices of the City, are implemented by members of the NYPD engaging in systematic and ubiquitous perjury, both oral and written, to cover up federal law violations committed against civilians by either themselves or their fellow officers, supervisors and/or subordinates. They do so with the knowledge and approval of their supervisors, commanders and Commissioner who all: (i) tacitly accept and encourage a code of silence wherein police officers refuse to report other officers' misconduct or tell false and/or incomplete stories, inter alia, in sworn testimony, official reports, in statements to the CCRB and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers; and (ii) encourage and, in the absence of video evidence blatantly exposing the officers' perjury, fail to discipline officers for "testilying" and/or fabricating false evidence to initiate and continue the malicious prosecution of civilians in order to cover-up civil rights violations perpetrated by themselves, fellow office supervisors and/or subordinates against those civilians.

218.    All of the foregoing acts by defendants deprived Plaintiff of his federally protected rights, including, but limited to, the constitutional rights enumerated herein.

Defendant **THE CITY OF NEW YORK** knew or should have known that the acts

---

16 Daily News, Editorial: City Leaders Must Get Serious About Policing the Police, August 20, 2008.

alleged herein would deprive Plaintiff of his rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

219.   Defendant **THE CITY OF NEW YORK** is directly liable and responsible for the acts of Defendants, as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules   and regulations of the City and NYPD, and to require compliance with the Constitution  and laws of the United States.

220.   Despite knowledge of such unlawful de facto policies, practices, and/or customs, these supervisory and policy-making officers and officials of the NYPD and the **THE CITY OF NEW YORK**, including the Commissioner, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead approve and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in the City of New York.

221.   The aforementioned Defendant's **THE CITY OF NEW YORK** policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and encouraging their misconduct are evidenced by the police misconduct detailed herein. Specifically, pursuant to the aforementioned City  policies, practices and/or customs, Defendants felt empowered to arrest Plaintiff without probable cause and then fabricate and swear to a false story to cover up their blatant violations of Plaintiff's constitutional rights.

222.   Pursuant to the aforementioned **THE CITY OF NEW YORK** policies, practices and/or customs, the officers failed to intervene in or report Defendants' violations of Plaintiff's

rights.

223.   Plaintiff's injuries were a direct and proximate result of the defendant **THE CITY OF NEW YORK**'s wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant **THE CITY OF NEW YORK** to properly supervise, train and discipline their police officers.

224.   At all times material to this complaint, Defendant **THE CITY OF NEW YORK** acting through its department of corrections and through Defendants, **CORRECTION OFFICER DANIEL ROBLES (SHIELD #13214), CAPTAIN "JOHN" THOMPSON (SHIELD #86) AND CORRECTION OFFICERS JOHN DOE # 1-5** had in effect actual and/or *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

225.   At all times material to this complaint, Defendant **THE CITY OF NEW YORK** acting through its department of corrections and through Defendants **CORRECTION OFFICERS,** had in effect and/or *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise and discipline employees and correction officers, and of failing to inform the individual Defendants' supervisors of the need to train, screen, supervise and discipline said Defendants.  The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

226.   Defendant **THE CITY OF NEW YORK** acting through its department of correction and through Defendants **CORRECTION OFFICERS,** being aware that such lack of training, screening, supervision, and discipline leads to improper conduct, acted with deliberate indifference in failing to establish a program of effective training, screening, supervision and discipline. Defendant **THE CITY OF NEW YORK** being aware that the persistent and substantial risk of improper detention and custody of inmates, and effective training,

screening, supervision and discipline would lessen the likelihood of such occurrences. There are recurrent circumstances which involve such potential danger to the constitutional rights of citizens, more specifically Plaintiff and which are officially tolerated by Defendant **THE CITY OF NEW YORK**. Such policies, practices, customs or usages were a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the harm/damages alleged herein, in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. § 1983 and the United States Constitution, including its Fourth and Fourteenth Amendments.

227.    That Defendants had the responsibility and obligation to provide proper security upon said premises.   Defendants had the responsibility and obligation reasonably safeguard the inmates, including Plaintiff.  Defendants failed to do so here.

228.    The acts complained of were carried out by the aforementioned defendants in their capacities as correction officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the City and DOC, all under the supervision of ranking officers of the DOC.

229.    The aforementioned customs, practices, procedures and rules of the City and DOC include, but are not limited to: 1) using unnecessary excessive force; 2) practice of punishments and use of force towards inmates in their care and custody; 3) failing to supervise, train, instruct and discipline correction officers thereby encouraging their misconduct and exhibiting deliberate indifference towards the constitutional rights of persons within the officers' jurisdiction; 4) discouraging correction officers from reporting the corrupt or unlawful acts of other officers; 5) retaliating against officers who report correction officers' misconduct; and 6) failing to intervene to prevent the above-mentioned practices when they reasonably could have been prevented with proper supervision.

Case 1:16-cv-05667-VEC   Document 50   Filed 09/08/17   Page 54 of 58

230.    At the time of the aforementioned constitutional violations, **THE CITY OF NEW YORK** and DOC were and had been on notice of such unconstitutional conduct, customs, and de facto policies, such that the failure of City and DOC to take appropriate remedial action amounted to deliberate indifference to the constitutional rights of persons with whom the correction officers come in contact. In light of the extensive pattern of well-settled, pervasive customs and policies causing constitutional violations, documented in part infra, the need for more effective supervision and other remedial measures was patently obvious, but the **THE CITY OF NEW YORK** and DOC made no meaningful attempt to prevent future constitutional violations.

231.    Defendant **THE CITY OF NEW YORK** knew or should have known that the acts alleged herein would deprive Plaintiff of his rights under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

232.    Defendant **THE CITY OF NEW YORK** is directly liable and responsible for the acts of Defendants, as it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules     and regulations of the City and DOC, and to require compliance with the Constitution     and laws of the United States.

233.    Despite knowledge of such unlawful de facto policies, practices, and/or customs, these supervisory and policy-making officers and officials of the DOC and **THE CITY OF NEW YORK**, including the Commissioner, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train correction officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead approve and ratify these policies, practices and/or customs through their active encouragement of,

deliberate indifference to and/or reckless disregard of the effects of said policies, practices and/or customs or the constitutional rights of persons in the City of New York.

234.   The aforementioned Defendant's **THE CITY OF NEW YORK** policies, practices and/or customs of failing to supervise, train, instruct and discipline police officers and correction officers and encouraging their misconduct are evidenced by the misconduct detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, Defendants felt empowered to use excessive and unnecessary force on Plaintiff in blatant violation of Plaintiff's constitutional rights. Plaintiff's injuries are a direct and proximate result of the defendant **THE CITY OF NEW YORK**'s wrongful de facto policies and/or well-settled and widespread customs and       practices and of the knowing and repeated failure of the defendant **THE CITY OF NEW YORK** to properly supervise, train and discipline their correction officers.

235.   Pursuant to the aforementioned **THE CITY OF NEW YORK** policies, practices and/or customs, the officers failed to intervene in or report Defendants' violations of Plaintiff's rights.

236.   The decision to utilize the use of force in these circumstances outlined *supra*, rises to the level of a failure of **THE CITY OF NEW YORK** to train their employees.  The need for more or different training in these circumstances were so obvious that the inadequacy was so likely to result in the violation of constitutional rights in this case that they clearly were deliberately indifferent to the need to provide different or proper training.

237.   There is a pattern of utilizing the use of force in this fashion and the policymakers were aware of and acquiesced in this pattern.

238.   Moreover, **THE CITY OF NEW YORK** may be held liable for torts committed by an

individual under the theory of *respondeat superior*. 17  This applies specifically to Mr. McGrier's applicable state law claims.

239.  Additionally, **THE CITY OF NEW YORK** should be liable with regards to the 1983 claim premised on the Correction Officers' use of excessive force.

240.  The inadequate training that the individual defendants received not only is the reason for the defendants' deficiencies, but also these deficiencies in and of themselves caused the Plaintiff's injuries.  For example, the failure to train its police officers is evident here where Defendants violated their obligations under the Brady Rule by withholding important and relevant information undercutting the reliability and credibility of the "witnesses".  The police in this case mislead the prosecution.  The prosecution in this case was actively involved in the investigation and chose also not to investigate the reliability of the identification procedures.  The indication that identification was made because the witness was "sweating" in and of itself is an indication of the inadequate training.  Moreover, no reasonable individual in the defendants' position could have concluded that there was probable cause to initiate Mr. McGrier's prosecution.

241.  The District Attorney was obligated to supervise his employees at the District Attorney's office, but failed to do so.  As such, this indictment was procured through improper means and in violation of the constitutional rights of Mr. McGrier.  The District Attorney's office knew or had reason to know about the improprieties of the investigation and that Mr. McGrier should not have been tried, but yet the individual ADAs did not take any steps to terminate the prosecution.  There were many points during the course of the chronology of events where the ADAs should have and could have terminated the prosecution of Mr.

---

17 *Eckardt v. City of White Plains*, 87 A.D.3d 1049, 930 N.Y.S.2d 22, 25 (2011)

McGrier, beginning with the meeting described *supra*, where the charges were decided by and between the Homicide Unit and the A.D.A and ending three (3) years later in a trial and acquittal.    The personal involvement of the individual ADA defendants also causes municipal liability to attach in this instance.

242.   The individual Correction Officers were not adequately trained in use of force.  They were also not properly supervised.  This failure to train and supervise is what led to the injuries sustained by Mr. McGrier.  Injuries, which could have been prevented had there not be such obvious deficiencies in the training and supervision at Rikers Island while Mr. McGrier was in custody.

243.   Additionally, even if the names of all of the Correction Officers in every instance of misconduct are not determined, there is still "nothing to prevent a plaintiff from foregoing the naming of an individual officer as a defendant and proceeding directly to trial against the municipality." *Wilson v. Town of Mendon*, 294 F.3d 1, 7 (1st Cir. 2002).  Where municipal officers act unconstitutionally pursuant to a municipal custom, policy and/or practice, municipalities may be held liable regardless of whether the individual officers are, or even can be, sued.

244.   As a result of the foregoing, Plaintiff was deprived of his liberty, suffered specific physical injury, psychological injury and emotional distress, great humiliation, costs and expenses, and was otherwise damaged and injured.

**PLEASE TAKE NOTICE,** that Plaintiff **FREDDIE MCGRIER** reserves the right to amend this complaint to add new parties up to and including time of trial.

**WHEREFORE,** Plaintiff demands the following relief jointly and severally against all of the Defendants:

      a.   Compensatory damages;

    b.   Punitive damages;

    c.   Declaratory relief;

    d.   Injunctive relief;

    e.   The convening and empanelling of a jury to consider the merits of the claims herein;

    f.   Costs and interest and attorneys' fees;

    g.   Such other further relief as this court may deem appropriate and equitable.

Dated:     New York, New York
            September 8, 2017

 

Respectfully submitted,

**NOVO LAW FIRM, PC**
*Attorney for Plaintiff*

By: Ellie A. Silverman, Esq. (4701868)
299 Broadway, 17th Floor
New York, New York 10007
(212) 233-6686
**File No. 12-5805**
ellies@novolawfirm.com

58